## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 21-CR-28-APM** |
| | ) | |
| **GRAYDON YOUNG,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT GRAYDON YOUNG'S MOTION FOR
### RECONSIDERATION OF DETENTION ORDER

The Defendant, Graydon Young, by and through counsel, Desiree Wilson and Robert D. Foley, submits the within Motion for Reconsideration of Detention Order entered by the Honorable United States Magistrate Judge Thomas G. Wilson in the United States District Court for the Middle District of Florida, Docket Number 8:21-MJ-1148-TGW (Exhibit A). In support thereof, Mr. Young states as follows.

### I.      Factual Background

In a Second Superseding Indictment, the Government charged Mr. Young with five counts. Doc. # 77. The Government alleges Mr. Young violated 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding, and Aiding and Abetting), 18 U.S.C. §§ 1361, 2 (Destruction of Government Property and Aiding and Abetting), 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds), and 18 U.S.C. § 1512(c)(1) (Tampering with Documents or Proceedings). The Government alleges a large crowd gathered outside the Capitol as the Joint Session of the United States House of Representatives and the United States Senate convened in the United States Capitol on January 6, 2021 to certify the

Electoral College vote.  Doc. # 77, pp. 2-3.  The Government claims crowd members forced their way through barricades and forced entry into the Capitol building.  *Id.* at 3.

The United States alleges the Capitol suffered millions of dollars in damage, including broken windows and doors, graffiti, and residue from pepper spray, tear gas, and fire extinguishers. *Id.* at 3-4.  The Second Superseding Indictment further alleges Mr. Young belonged to a militia organization called the Oath Keepers.  *Id.* at 4-5.  The Government claims Mr. Young and other co-defendants planned and conspired to forcibly enter the Capitol on January 6, 2021 in order to stop, delay, and hinder the Congressional proceeding occurring on that date.  *Id.* at 5.

Contrary to the allegations in the charging documents, on March 10, 2021, the Government confirmed to Mr. Young that communications between Mr. Young and the co-defendants revealed no reference to any pre-planning or other prior discussion of forcibly entering the Capitol on January 6, 2021.  The Government further disclosed that the evidence gathered to date, along with publicly-available footage, confirms the damage to the window panes on the Capitol doors was not caused by Mr. Young or the co-defendants in this case.  The Government stated, "Capitol surveillance video footage as well as publicly available video footage suggests that the damage to the glass window panes on these doors was done prior to your clients' entry through the doors." The Government further disclosed, "The timing of the other damage is not clear at this time."  The Government further revealed in an e-mail on March 10, 2021 the evidence indicates no one gave a signal to Mr. Young or the other co-defendants to enter the Capitol prior to their entry on January 6, 2021.

On March 12, 2021, the Government disclosed that Mr. Young and other co-defendants provided aid to another individual who was injured.  The Government disclosed, "[S]urveillance footage from inside the Capitol shows Ms. Watkins, Mr. Crowl, Mr. Young, Ms. Steele, and Ms.

Sandra Parker helping an individual who appears to be part of the larger group of Oath Keeper members and affiliates out of the Capitol.  That individual appears to be in need of aid after an interaction with law enforcement inside the Capitol."

Far from the pre-planned, intentional conspiratorial overthrow of our democracy the United States alleges Mr. Young and the co-defendants planned and executed, the events of January 6, 2021 involved a United States citizen seeking to engage in Constitutionally-protected free speech; a person who sought to keep the peace and offer protection to innocent bystanders.  The evidence which continues to be produced confirms the allegations in the Second Superseding Indictment and other charging documents are nowhere near as concrete and nefarious as the Government led the magistrate court to believe at Mr. Young's detention hearing.

## II.    Standard of Review

As this Court reviews the findings of the magistrate court, it will do so using a *de novo* standard of review.  "'The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'"  *U.S. v. Johnston*, 2017 U.S. Dist. LEXIS 159461, *8 (D.C. Cir. 2017) (citing *U.S. v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (quoting *U.S. v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011)); *see also U.S. v. Hitselberger*, 909 F. Supp. 2d 4, 7 (D.D.C. 2012)).

## III.    Argument

Determination of whether a defendant should be detained must always begin with a presumption in favor of release.  *U.S. v. Ali Muhamed Ali*, 793 F. Supp. 2d 386, 387 (D.D.C. 2011).  "'In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'"  *Id.* (citing *United States v. Gloster*, 969 F. Supp. 92, 96-97 (D.D.C. 1997) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))).  "The Bail Reform Act of 1984

(Act), 18 U.S.C.S. § 3141 *et seq.*, sets forth the limited circumstances in which a defendant may be detained before trial despite the presumption in favor of liberty."  *U.S. v. Yaming Nina Qi Hanson*, 613 F. Supp. 2d 85, 86 (D.D.C. 2009).  The court is tasked with determining whether the defendant poses a flight risk or a danger to any other person and the community.  18 U.S.C. § 3142.

Determination of whether the defendant is a flight risk is weighed by a preponderance of the evidence, and whether the defendant poses a danger to the community is determined by a standard of clear and convincing evidence.  *U.S. v. Ali Muhamed Ali*, 793 F. Supp. 2d at 387.  Clear and convincing evidence means proof that the particular defendant actually poses a danger to the community, not that a defendant "in theory" poses a danger.  *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991).  Only if there is a "strong probability that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty.  *U.S. v. Ploof*, 851 F.2d 7 (1st Cir. 1988).

For a court to detain a defendant pending trial, one of six (6) factors enumerated in 18 U.S.C. § 3142(f) must be satisfied.

> Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained. *See* 18 U.S.C. § 3142(a). The Act establishes procedures for each form of release, as well as for temporary and pretrial detention. Detention until trial is relatively difficult to impose. First, a judicial officer must find one of six circumstances triggering a detention hearing. *See* 18 U.S.C. § 3142(f). Absent one of these circumstances, detention is not an option. *See, e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988).

*United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).  Section 3142(f)(1) of 18 United States Code lists particular charges which permit an attorney for the Government to seek detention.  The judicial officer is tasked with determining (1) whether the case involves a crime specified in the statute; and (2) whether a condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any person and the community.  18 U.S.C. § 3142(f)(1).

## A.  The Case Does Not Involve a Crime Specified in 18 U.S.C. § 3142(f)(1)

The only factor set forth at section 3142(f)(1) which could apply to Mr. Young's case is "an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed."  *Id.* at § 3142(f)(1)(A).  The only offense at issue in this case found within section 2332b(g)(5)(B) is Count 3, Destruction of Government Property and Aiding and Abetting, 18 U.S.C. §§ 1361, 2.  Doc. # 77, pp. 18-19; 18 U.S.C. § 2332b(g)(5)(B)(i).  For this crime to serve as the trigger for detention, a maximum term of imprisonment of 10 years or more must be prescribed.  18 U.S.C. § 3142(f)(1)(A).  The crime of Destruction of Government Property is punishable in two ways: (1) as a misdemeanor, when the damage does not exceed $1,000; or (2) as a felony, when damage exceeds $1,000.

> Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses, shall be punished as follows:
>
> If the damage or attempted damage to such property exceeds the sum of $1,000, by a fine under this title or imprisonment for not more than ten years, or both; if the damage or attempted damage to such property does not exceed the sum of $1,000, by a fine under this title or by imprisonment for not more than one year, or both.

18 U.S.C. § 1361.  While the Second Superseding Indictment charges Mr. Young with a violation of this statute and alleges damage in excess of $1,000, the Government admits that damage was done prior to Mr. Young's entry into the Capitol, and the source of other damage is "unclear at this time."  Specifically, the Government alleges significant damage was done to the Capitol, including broken windows and doors, graffiti, residue from pepper spray, tear gas, and fire extinguishers.  Doc. # 77, pp. 3-4.  The Government relied upon this damage to argue the

presumption in favor of detention applied to Mr. Young.  Exhibit A, p. 2. The magistrate court also relied upon the Government's representations concerning property damage to detain Mr. Young. *Id.*

Yet, the Government admitted in a disclosure to Mr. Young on March 12, 2021 that damage to the window panes on the Capitol doors was done prior to Mr. Young's entry into the Capitol. Furthermore, the Government conceded in its disclosure to Mr. Young, "The timing of the other damage is not clear at this time."  If Mr. Young did not cause the damage to the windows on the Capitol door, and the timing of other damage is "not clear at this time," the Government does not have evidence to prove Mr. Young caused damage to Government property.  That being the case, this case does not even involve a crime specified in 18 U.S.C. § 3142(f)(1)(A).

In addition to proving Mr. Young actually caused damage, the Government must also establish that the amount of that damage is in excess of $1,000 because 18 U.S.C. § 3142(f)(1)(A) requires the triggering crime be punishable by imprisonment of 10 years or more.  There is no evidence Mr. Young damaged any government property in excess of $1,000.   Since the Government has no evidence that Mr. Young damaged government property, and moreover lacks evidence Mr. Young caused damage exceeding $1,000, the fragile link between this case and the crimes specified in 18 U.S.C. § 3142(f)(1) is even more apparent.  Absent one of the circumstances outlined in 18 U.S.C. § 3142(f) applying to Mr. Young's case, detention is simply not an option. *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).

The Government also charged Mr. Young with aiding and abetting Destruction of Government Property.  Doc. # 77, pp. 18-19.  The Government has not identified which principal allegedly damaged government property, which property was damaged, the amount of such damage, or the way in which Mr. Young allegedly aided and abetted this unidentified principal in

the destruction of government property.  If the Government intends to seek to detain Mr. Young pending trial on the basis of the aiding and abetting charge, the Government must present some evidence that Mr. Young took an affirmative act in furtherance of the offense of damaging government property and that he had the intent of facilitating the commission of the offense in doing so.  The Government cannot present such evidence because it has not specified who Mr. Young allegedly aided and abetted.

> As at common law, a person is liable under §2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission. *See* 2 W. LaFave, Substantive Criminal Law §13.2, p. 337 (2003) (hereinafter LaFave) (an accomplice is liable as a principal when he gives "assistance or encouragement . . . with the intent thereby to promote or facilitate commission of the crime"); *Hicks v. United States*, 150 U.S. 442, 449, 14 S. Ct. 144, 37 L. Ed. 1137 (1893) (an accomplice is liable when his acts of assistance are done "with the intention of encouraging and abetting" the crime).

*Rosemond v. U.S.*, 572 U.S. 65, 71 (2014).  The Government admits damage to the window panes on the Capitol doors was done prior to Mr. Young's entry into the Capitol.  Since the Government represents that Mr. Young entered the Capitol simultaneously with other co-defendants, the party responsible for the alleged damage to government property and the manner in which Mr. Young supposedly aided and abetted them is entirely unclear.  Considering the tenuousness of the link between Mr. Young and any damage to government property whatsoever, Mr. Young should not be detained on the basis of aiding and abetting destruction of government property or as a principal for this crime.

### B.  The Rebuttable Presumption Set Forth in 18 U.S.C. 3142(e)(2) Does Not Apply

Section 3142(e) of 18 United States Code sets forth a rebuttable presumption of detention pending trial:

> (3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—

* * *

(C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code [18 USCS § 2332b(g)(5)(B)], for which a maximum term of imprisonment of 10 years or more is prescribed;

18 U.S.C. § 3142(e)(3).   At Mr. Young's detention hearing before the magistrate court, the Government argued the presumption applied due to Mr. Young being charged with destruction of government property (an offense listed in section 2332b(g)(5)(B) of Title 18, United States Code). Exhibit A, pp. 2-3; U.S. District Court for the Middle District of Florida, Docket Number 8:21-MJ-1148-TGW, Doc. # 14, pp. 1-2 (Exhibit B).   At that time, counsel for Mr. Young had no discovery at their disposal and relied solely upon the Complaint, Indictment, and extremely limited materials provided by the United States minutes prior to the hearing.   Based upon the extremely limited information available to counsel at that time, it appeared the presumption did apply.

Upon further development of this case, though, that conclusion no longer applies.   The fact that the United States does not have evidence Mr. Young damaged any property undermines the United States' argument that this presumption applies to Mr. Young.   Additionally, since there is no evidence Mr. Young actually damaged government property, there is also no evidence Mr. Young caused in excess of $1,000 worth of damage – meaning that even if the United States could establish probable cause to believe Mr. Young damaged property, there is not probable cause to believe Mr. Young caused the level of damage required to bring the crime within the felony provision of the statute.

Even if this Court finds the presumption applies, Mr. Young asserts it was rebutted at his first detention hearing, and if another hearing is held before this Court, he will rebut it there.   Mr.

Young has presented some credible evidence contrary to the statutory presumption or basis to conclude the case falls outside the congressional paradigm giving rise to the presumption.

> Once triggered, "the presumption operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371, 247 U.S. App. D.C. 247 (D.C. Cir. 1985).  "While the burden of production may not be heavy," *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016) (citations omitted), the defendant must proffer "at least some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'" giving rise to the presumption. [*United States v.] Stone*, 608 F.3d [939] at 945-46 [(6th Cir. 2010)] (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (finding that the presumption "represents Congress's general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches"). The defendant's burden, moreover, is only a burden of production; the burden of persuasion remains with the government throughout the proceeding.  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *see also Alatishe*, 768 F.2d at 371 n.14 (*citing Jessup*, 757 F.2d 378, but not deciding the question).

*United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018).  Because the development of the evidence in this case establishes Mr. Young did not damage property and the Government cannot even state with certainty when the majority of the damage occurred, Count 3 of the Second Superseding Indictment (18 U.S.C. §§ 1361, 2 (Destruction of Government Property and Aiding and Abetting)) should not be used as a basis to apply a presumption in favor of detention for Mr. Young.

**C.  <u>There Is Not a Serious Risk Mr. Young Will Flee or Will Obstruct Justice or Threaten, Injure, Intimidate, or Attempt to Threaten, Injure, or Intimidate a Prospective Witness or Juror</u>**

The Government may also seek detention pursuant to 18 U.S.C. § 3142(f)(2) if: (1) there is a serious risk the person will flee; or (2) there is a serious risk that the person will "obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."  18 U.S.C. § 3142(f)(2).  Magistrate Judge Wilson

made a finding that Mr. Young does not present a serious risk of flight.  Exhibit A, pp. 2-3.  The Government alleged in the original Complaint and in the Second Superseding Indictment Mr. Young violated 18 U.S.C. § 1512(c)(1) (Tampering with Documents or Proceedings) because he deleted his Facebook account.  Doc. # 1-1, p. 13; Doc. # 77, p. 21.  At the detention hearing, the Government argued Mr. Young posed a risk of obstruction of justice because he deleted this Facebook account.

Magistrate Wilson did not find this argument convincing.  Aside from issues concerning Mr. Young's lawful right to remove his own Facebook account at will, the Government's position in this regard is weak because Mr. Young did not remove the Facebook account because he learned of an active investigation.  The Government alleged in the Complaint Mr. Young removed his Facebook account January 7, 2021 – well before Mr. Young was aware of any investigation centered on him, and well before he received notice that a warrant for his arrest had issued on February 15, 2021.   Mr. Young does not pose a serious risk of obstruction of justice simply because he deleted his Facebook account.

The United States makes the additional allegation in the Second Superseding Indictment that on January 8, 2021, Mr. Young "did corruptly alter, destroy, mutilate, and conceal a record, document, and other object, and attempted to do so, with the intent to impair its integrity and availability for use in an official proceeding, that is, the FBI investigation and the grand jury investigation into the attack on the Capitol on January 6, 2021." Doc. # 77, p. 21.  The Government has not presented evidence Mr. Young knew of an FBI investigation or grand jury investigation merely two (2) days following the events of January 6, 2021.  Tampering with Documents or Proceedings pursuant to 18 U.S.C. § 1512(c)(1) requires proof that the defendant had the "intent to impair the object's integrity or availability for use in an official proceeding."  18 U.S.C. § 1512.

Mr. Young was not notified of any official investigative action until he learned of the warrant for his arrest on February 15, 2021.  The timing alone of any alleged action on Mr. Young's part to remove his Facebook account indicates the Government cannot establish that Mr. Young possessed the requisite intent to prove a violation of 18 U.S.C. § 1512.  Use of this charge to argue that Mr. Young poses a threat to prospective witnesses or jurors is unconvincing, at best.

There is no evidence Mr. Young poses any threat that he will threaten, injure, intimidate, or attempt to threaten, injure, or intimidate any prospective witnesses or jurors.  Mr. Young and his wife own the Young Children's Academy, a daycare center in Englewood, Florida.  The only crime with which he has been convicted in his entire life is driving a motorcycle without a license, and there is not a scintilla of evidence that Mr. Young poses any risk of threatening, injuring, intimidating, or attempting to do so to any witnesses or jurors.  Since the Government cannot establish that Mr. Young's case falls within 18 U.S.C. § 3142(f), there is no basis to detain him.

**D.** **Conditions of Release Will Reasonably Assure Mr. Young's Appearance and the Safety of Any Other Person and the Community**

If the Court finds that a factor or factors set forth in 18 U.S.C. § 3142(f) permit the Government to seek detention, the Court should find that there are conditions of release that will reasonably assure the appearance of Mr. Young as required and the safety of any other person and the community.  18 U.S.C. § 3142(f), (g).  To determine whether there are conditions of release which will ensure Mr. Young's appearance and the safety of any other person and the community, the Court is directed to take into account:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

    (i)    <u>The Nature and Circumstances of the Offenses and the Weight of the Evidence Weigh in Favor of a Finding that Conditions of Release Will Ensure the Safety of Any Other Person and the Community</u>

Subsections (1) and (2) weigh in favor of a finding that conditions can be imposed which ensure the safety of any other person and the community. The second superseding indictment contains five (5) counts relevant to Mr. Young, alleging he violated 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding, and Aiding and Abetting), 18 U.S.C. §§ 1361, 2 (Destruction of Government Property and Aiding and Abetting), 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds), and 18 U.S.C. § 1512(c)(1) (Tampering with Documents or Proceedings). Doc. # 77. None of these crimes, aside from Destruction of Government Property (which, as set forth above, likely does not permit detention), permit the Government to seek detention.

12

The magistrate court relied heavily upon the Government's representations at the detention hearing that Mr. Young pre-planned the events of January 6, 2021; that he and the co-defendants premeditated an attack on the Capitol and executed that attack by entering the Capitol building on January 6, 2021.   The magistrate court found Mr. Young's conduct was "intentional and purposeful" and that the circumstances indicated a "preparation for violence."  Exhibit A, pp. 3-5. However, the evidence reveals Mr. Young and the other defendants in this case did not engage in a pre-planned attack at the Capitol.

The Government disclosed that communications amongst Mr. Young and co-defendants confirm there was **no reference to any plan** to forcibly enter the U.S. Capitol on January 6, 2021. The Government further confirmed that no one gave a signal to enter the Capitol to Mr. Young or other co-defendants prior to their entry.  These disclosures significantly weaken one of the primary bases upon which the magistrate court decided Mr. Young posed a risk of danger to any other person and the community.

Mr. Young did not tear down barricades to get to the Capitol.  While at the Capitol, Mr. Young did not possess a weapon.  He did not damage any property inside the Capitol.  The United States admits that the considerable amount of evidence it has gathered to date, along with publicly-available footage, confirms neither Mr. Young nor the co-defendants in this case damaged the windows on the Capitol doors – this damage was done prior to Mr. Young's and the co-defendants' entry into the Capitol.  The United States admits the timing of other damage is "unclear at this time."  Mr. Young did not injure anyone.  In fact, the Government concedes video footage confirms Mr. Young assisted an injured individual and helped them get to safety.

Mr. Young did not engage in a pre-planned attack of the Capitol.  He came to the Capitol to participate in a rally, as was his First Amendment right protected by the United States

Constitution.  Mr. Young did not arrive at the Capitol conspiring to disrupt the Congressional certification of votes.  He attended the rally to express his political views and to provide security to others expressing their political views.  Moreover, the evidence gathered to date confirms that intent – video footage documents Mr. Young assisting an injured person inside the Capitol and helping them get to safety.

Pairing the fact that the Government's ability to even seek detention in this case is on questionable ground with the reality that Mr. Young did not engage in pre-planning of the events of January 6, 2021, attended the rally with the intent to exercise his First Amendment rights, and not only went with the mindset of providing security and protecting other citizens – but actually effectuated that intent by assisting injured people to safety – Mr. Young should not be detained pending trial.  The nature and circumstances of the offense, paired with the weight of the evidence, counsel in favor of release on conditions, if the Court deems conditions necessary.

(ii)    <u>Mr. Young's History and Characteristics Favor Release</u>

When the Court considers whether conditions of release may ensure the safety of any other person and the community, Section 3142 of 18 United States Code directs the Court to consider:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;

18 U.S.C. § 3142(g).  At the time of the current offenses, Mr. Young was not on probation, parole, or other release.  Therefore, subsection (B) does not apply.  Subsection (A) favors release.

Mr. Young has a strong character.  He is a business owner and active member of his community.  Mr. Young has been married for nineteen (19) years, and lives with his wife, Stephanie Young, in Englewood, Florida (Sarasota County).  They have lived there since 2006. Prior to that, he lived in Bradenton, Florida (Manatee County) and Sarasota, Florida (Sarasota County) since 1996.  The Youngs have two (2) children together, and Mr. Young has another son with whom he maintains weekly contact.  His oldest son has a three-year-old daughter with whom Mr. Young is close.

Mr. Young has extremely strong ties to the community.  He and his wife own and operate the Young Children's Academy, a childcare center, which they have owned and operated for the past sixteen (16) years.  Mr. Young is involved with the community as a member of Suncoast Reef Rovers, a dive club dedicated to caring for the reefs and shorelines of Florida, and the Englewood Dive Club.  He was President of the PTO for Venice High School Marine Corp JROTC when his boys were members.  He also volunteered for Mote Marine Laboratory in Sarasota for three (3) years cleaning the shark tanks on a weekly basis.  Mr. Young has also held positions of leadership in his church including Cub Master and Assistant Scout Leader as well as being Secretary of the Young Men's Presidency.  He is also a member of the Elder's Quorum, a church men's group that freely offers services to the church and the community, most frequently participating to help with disaster clean-up after hurricanes throughout Florida.

Mr. Young has no past conduct which would give any indication that he poses a risk of danger to any individual or witness or juror in this case.  He has enormous respect for the law, as evidenced by his utter lack of criminal history and service with the United States military in the U.S. Navy Reserve for seven (7) years, renewing his original enlistment after 9/11 to be available for his country.  When Mr. Young learned there was a warrant out for his arrest in this case, he

presented himself voluntarily to law enforcement within twenty (20) minutes.  Mr. Young literally dropped everything he was doing and turned himself in the moment he learned a warrant was out for his arrest.

Mr. Young does not abuse alcohol or drugs.  He last used alcohol twenty-three (23) years ago.  Mr. Young has never been convicted of any crime other than driving a motorcycle without a license.  That conviction was entered as "adjudication withheld" in 2008.  Finally, Mr. Young has a spotless history of court appearances – largely because his involvement with the criminal justice system is limited to one conviction for driving a motorcycle without a license.

The psychological burdens of being detained pending trial are very real for Mr. Young.  Since he has no previous experience with the criminal justice system, being detained is taking an extremely high toll on his mental well-being.  Prior to being detained, Mr. Young was a mentally strong and stable person with no history of mental disorders.  His current emotional and psychological state is owing entirely to the fact that he has been detained and is unable to rely upon his normal social support systems.  Because he is such a strong family man, locking him up away from his wife and children with the prospect of an extremely long period of time before trial is even scheduled is causing potentially irreparable psychological and emotional damage to Mr. Young.  This factor favors release.

On the balance, Mr. Young's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history of drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings all counsel heavily in favor of release.

(iii)     The Nature and Seriousness of the Danger to Any Person or the Community That Would be Posed by Mr. Young's Release Favor Release

Subsection (4) of 18 U.S.C. 3142(g) directs the court to consider the nature and seriousness of the danger to any person or the community that would be posed by Mr. Young's release.  This factor favors release for many of the same reasons previously addressed.  Mr. Young is a person who traveled to the Capitol to attend a rally and offer protection to other citizens.  He is a family man who has a history of community connection and contributions, no history of drug or alcohol abuse, no criminal history, and who has enormous respect for the law.

Mr. Young is someone who has served our Country in the military, and whose intentions on January 6, 2021 were in line with those of other patriotic Americans – to exercise his rights protected under the United States Constitution.  Mr. Young poses no risk of danger to any person or the community.  Even the Pre-trial Services report prepared for the magistrate court noted the only danger Mr. Young posed was owing to the "nature of the alleged instant offense."  He is a person who protects and helps vulnerable people; not a person who attacks, destroys, and injures, as the United States would have the Court believe.  Because the United States cannot point to any concrete evidence indicating Mr. Young poses a danger to any person or the community, there are conditions that can be fashioned, if the Court finds them necessary, to assure the safety of any other person and the community.

### E.  Conditions of Release

Should the Court determine conditions of release should be imposed, the Court should follow the recommendation of the pre-trial services officer who prepared Mr. Young's pretrial services report in Tampa, Florida.  Section 3142(c)(1)(B) of 18, United States Code requires the court to impose the least restrictive condition or combination of conditions which will assure the

17

appearance of the person and the safety of any other person and the community.  18 U.S.C. § 3142(c)(1)(B).

Mr. Young should be permitted to reside in his home in Englewood, Florida in the third-party-custody of his wife, Stephanie Young.  The pre-trial services report prepared for the magistrate court noted a criminal history check was performed on Mrs. Young, and she has no history of any arrests.  If the Court is inclined to impose conditions, Mr. Young submits that the following conditions recommended by Pre-trial Services in the Middle District of Florida will assure his appearance and that he will not endanger the safety of any other person or the community:

1)  Mr. Young shall report as directed to pretrial services;

2)  Mr. Young's travel shall be restricted to the Middle District of Florida and the District of Columbia (for court purposes only);

3)  Mr. Young shall surrender his passport to pre-trial services;

4)  Mr. Young shall not apply for any new travel documents or passports;

5)  Mr. Young shall refrain from possessing any firearms, destructive devices, or dangerous weapons.

Mr. Young will attend all future court hearings as directed and follow any other conditions the Court may impose.

## IV.    Conclusion

Mr. Young respectfully requests this Court order he be released on his own recognizance. In the event this Court finds conditions of release must be imposed, Mr. Young submits the conditions recommended by Pre-Trial Services represent the least restrictive conditions which will assure his appearance and the safety of any other person and the community.

Respectfully Submitted,

/s/ Desiree Wilson
Desiree Wilson
Counsel for the Defendant, Graydon Young
Bar # FL 0061
Robert Foley Law Firm, Of Counsel
2259 Cleveland Avenue
Fort Myers, FL  33901
Phone: (239) 286-2905
dwilson@robertfoleylaw.com

/s/ Robert D. Foley
Robert D. Foley
Counsel for the Defendant, Graydon Young
FL Bar # 0119153
Robert Foley Law Firm
2259 Cleveland Avenue
Fort Myers, FL  33901
Phone: (239) 690-6080
bob@robertfoleylaw.com